253600 Leandro Spindola vs. Todd Blanche. Arguments not to accede to the opinion of the counsel for the appellant. You may proceed. Good morning. You may proceed. There is no red light, no green light, so... Oh, the light's not working this morning? I see red light, so that's why I'm silent. I'll do it right now, Judge. Oh, okay. Good morning, Your Honors. My name is Maria Hovakovic. I'm representing Mr. Spindola in this case. Mr. Spindola is a Brazilian national who fled Brazil after being victimized. He, his family, and most important, his three minor children, by a Mazzucchelli family, namely Rafael, Marta, and Edmore. In this case, I'd like to address two issues. One issue, the serious nonpolitical crime, and the second issue, protection under Convention Against Torture. Starting with the serious nonpolitical crime, I'd like to make some clarification. When you look at my brief, you can see that the terms perfect self-defense and defense of others' defense is used interchangeably, and this is because the perfect self-defense, I use the term of perfect self-defense as defined by a United States crane in the 10th Circuit, that this is lawful defense of such person, of another person. When the person using force reasonably believes such force is necessary to prevent death or great bodily harm to himself or another, or to terminate or prevent the commission of a forcible felony. And I also would like to clarify that when I'm using the word perfect self-defense, I'm talking about forming honest and reasonable belief. When I'm talking about imperfect self-defense, I'm talking about forming honest but unreasonable belief. Which defense are you asserting here? We are asserting perfect self-defense. So we are asserting that Mr. Spindola formed honest and reasonable belief that Rafael kidnapped his son and handed him over to his accomplices. How could that be reasonable after he fired at the car and hit the car, and at that time he saw that no one else was in the car, and his nephew took off in the car, your client fouled the nephew and then shot again and hit him. Why is it reasonable to think that he had kidnapped his son when he saw no one else was in the vehicle? The belief that my client formed was not just that Rafael kidnapped his son. It was the belief that Rafael kidnapped his son and handed him over to his accomplices. Okay. Why is he chasing him and shooting at the car again? When you look at the record, at the administrative record, the reasonableness of this belief is explained on pages 546 of the administrative record. And the testimony of Mr. Spindola on pages 574 to 576 explains why he was thinking that his son was in the hands of the Rafael accomplices. And he wanted to stop Rafael, to inquire, to hold him and to force him to reveal the place where his son is held. This is the belief that we prefer. Sorry, English is not my first language. How is that self-defense? If he believes Rafael has already given a kid over to someone else, how is shooting at Rafael self-defense? Whether it's perfect self-defense or imperfect self-defense, how is that self-defense? So the belief of my client was that if he stops, he was shooting at the engine of the car. He made nine shots. And he wanted to stop the car, he wanted to stop Rafael and force him to reveal where his son is. He was sure that Rafael handed him over, I mean, San Rodrigo, to his accomplices because it's explained in the belief that it was reasonable for him to think that his son was in the hands of accomplices because Rafael was always accompanied by his accomplices when he was victimizing my client and his family. So this is, sorry? Well, the statute says that there is no asylum if there's serious reasons for believing that the petitioner had committed a serious non-political crime outside the United States prior to arrival. Do you concede that serious reasons for believing is the same as probable cause? Yes, Your Honor. Okay, well here your client is charged in Brazil with attempted murder. Why can't we just assume that the Brazilian court that charged him with that found probable cause? Your Honor, in the administrative record you can find our arguments why we state that the very charge of attempted murder was improper because we substantiate our argument by the pictures from the records showing that Mr. Mestruandolo was aiming at the tires and also arguing that there was no requirements for attempted murder. And actually the Board of Immigration Appeals conceded that Mr. Mestruandolo was not properly charged with attempted murder because... Is that really what the Board of Appeals did? They found that even under your client's theory that it qualified as reckless endangerment and they concluded that reckless endangerment is a serious non-political crime. I don't think they had a ruling, did they, on whether attempted murder was established? I think they just went to the alternative, did they not? Yes, they went to the alternative, I mean to reckless endangerment of another person and our argument is that a crime of reckless endangerment of another was not committed if the justification, I mean perfect self-defense, negates the required mens rea, I mean recklessness in this crime. So this is our position, that crime was actually not committed because the required mens rea recklessness was negated by the justification. And a second error that we want to point to your honors is that since the Board made the determination that reckless endangerment of another person is a particularly serious crime by pointing to so-called similar cases, our position is that the cases that the Board pointed to were not actually similar, not only because they had different facts, but also because those cases did not involve the justification that we prefer. So this is number two. And number three, it's our understanding that the Board did not misunderstood Mr. Spindola's argument because the cases that the Board is citing clearly show that the cases are discussing imperfect self-defense, not perfect self-defense. So this is our position, is that since the decision of the immigration judge was just written that Spindola was mistaken and no third party was in danger of immediate harm at the time he chased and shot Rafael, the judge didn't make any determination whether the belief, Spindola's belief that his son was still in danger was honest and reasonable when he chased and shot Rafael. It is our position that since there was no such finding in the immigration judge's decision, the proper way for the Board was to remain the case. How does the particularly serious crime analysis apply here to the non-political serious crime analysis? So you are asking how the particular serious crime analysis applies to this case, correct? Yes, that's right. Did I understand correctly? So when you look at the Board's decision, you can see that the Board properly stated that particularly serious crime is more serious than serious non-political crime. So they decided that if it's determined that Spindola's crime is a particularly serious crime, it automatically provides conclusion that it was also a serious non-political crime. So that's why they used this way of thinking. Does serious mean felony or does it mean something else? Not necessarily. There is no rigid rule that it must be felony. The analysis is individualized analysis. Yes, you can look at different cases. So sometimes it's categorized as felony, sometimes no. But I mean that there is no rigid rule that it must be a felony. When we go to the second point that I wanted to make, I mean protection under Convention Against Torture, our position is that the Board committed three errors in their analysis. It was making the determination that there was no acquiescence by the Brazilian federal government, even though there is a lot of evidence that the government cooperated with Rafael. I know that Rafael received a substantial prison sentence for the prior incident, but he was let out after six months, I think, wasn't it? Actually after two years, but they included the pretrial detention. The Brazilian government did prosecute him, and you're arguing, well, he's let off easy because he only spent so many years or months. But doesn't that show that they were, at least in a way, enforcing their laws rather than cooperating with him? I mean, you're arguing that they're in concert with the government, but the government actually did prosecute him and sent him to prison, right? Yes, right. Your Honor, I see that my time is over. That's okay. May I answer? Please, please, please answer. So when we are – okay. Yes, actually Rafael was sentenced to 14 years, but as you correctly pointed, he spent only two years in prison. And when he was released, he was released under home regime – how to say – home regime sentence. And home regime, you can look at the administrative record, page 709, means that he was not allowed to leave his place of residence, Residencia Fiejo, but he was appointed by the court, Maracaí Court, as legal custodian of assets. He was accompanied by police officers and justice officers coming to the residence of Spindola when he was not allowed even to be in Maracaí. This is our position. He had restraining order issued by the court, and he was in the vicinity of Spindola's house. Bakery was 50 meters from the house, and he was not allowed to approach Spindola's family closer than 200 meters. I mean, it was blatant violation of all the requirements, and he was just – I see. All right, any further questions at this time, Judge Batchelor?  All right, you will have your three minutes rebuttal, counsel. Yes, sir. All right, let's hear from the government. Good morning. Good morning. May it please the court, Rudolfo Saenz for the U.S. Attorney General. This court should deny the petition for review because substantial evidence supports the serious nonpolitical crime determination and the CAT deferral denial. In terms of the serious nonpolitical crime determination, as counsel conceded earlier, the probable cause standard is what governs, and the analysis turns on conduct, not whether there was a conviction or not whether the conduct would qualify as a conviction, just on the underlying facts of what occurred. And the board has found that there should be, because we're not looking at the political nature of the offense here and we're just looking at the seriousness of it, a good indicator is whether there's substantial risk of violence and harm to other persons. And this court in Burhane added further that it could be, I'm sorry, Urbina Mejia, that a good indicator as well is whether there's a gross disproportion between the means and the ends used for the conduct. Here there's no dispute about what the conduct was. There's no dispute that he was charged with attempted murder. There's no dispute that he fired a number of shots in multiple locations, chased the victim for two kilometers with his car, ultimately injuring the victim, causing hospitalization. This fits within either the board's standard of substantial risk of harm because there was actual harm that resulted. It also fits within the gross disproportion between the means and the ends, even if we take into consideration the justification that's alleged here. Once there is that indication about seriousness, there's a presumption created. The burden flips to the petitioner to show that the bar does not apply. And in doing so here in this case, the petitioner raised a number of different arguments that the board addressed in turn. In terms of taking the argument at face value that he was not, that his conduct didn't qualify as attempted murder, the board said that's fine, even if we consider it as a reckless endangerment type of crime, that those have been sufficiently serious, and it pulled the reasoning from these particularly serious crime offenses, which admittedly uses a different analysis, but many of which rely on reasoning such as risk of harm to others, like in the Second Circuit's Nethegani case where shooting in the air created a high potential for serious or fatal harm. Here we have more than just shooting in the air. We have it pointed at the victim, hitting the victim. So that reasoning applies here. The board didn't engage in a particular serious crime analysis. It just borrowed that reasoning to reject petitioner's argument. What do you ask us to do? Do you ask us to follow the approach of the BIA or do a serious crime analysis? What's your preference? Well, there wasn't a particularly serious crime analysis made in terms of— I know, but we can do that, can't we? I guess the court could because it's a de novo issue, but I would have to rely on maybe supplemental briefing to provide the reasoning for that because it's a different analysis. All right. Okay. I mean, do you think that's the right way to go, to look at it through the lens of a serious— That's my question. Yes. Okay. Well, I can tell you I think we can do it. But should we do both or just do one? Just the reasoning that the board and the immigration judge relied on, which is— The reckless endangerment, to me, might be a little harder to affirm, other than the serious nonpolitical conduct, I think, might be the easier route, that's all. The serious nonpolitical? Yep. Yes. Correct, Your Honor. We would be in agreement with that. Okay. In terms of the self-defense justification, what the board did there was basically reject the notion that in U.S. jurisdiction, the self-defense would apply to the facts of this case. This is something that both the IJ and the board used reasoning for, and just basically that a person who— When the victim doesn't have the alleged kidnapped person, there's no risk of immediate harm. And when we're dealing in the U.S. with defense of others, there needs to be an immediate risk of harm, and then there needs to be a use of force that's necessary to evade that harm. So here, and again, we don't dispute any of the facts. The scenario was that the son was not with the victim. And so there was— It would be totally different if, for example, the victim had the son in the car, had him at gunpoint, and then we'd be asking this question. But basically, the board just rejected that defense from even applying here. I mean, what about sort of their theory of what was taking place? He's shooting at the car, not to shoot at Rafael, but to get him to stop so he can find out where his son is. I mean, how about that? Is that a proper theory of self-defense? It wouldn't apply because there's no immediate risk of harm. And we're still dealing with this probable cause standard, which is really low, and wouldn't, again, in the U.S. system, usually be taken into consideration as critically. But just alternatively, the IJ also acknowledged the facts of this case. How does the probable cause standard interact with a self-defense claim? How do those two interact here? That's a good question, Your Honor. I think what we have to do is resist the temptation to kind of borrow so much from the American jurisprudence on this. I think here, where we're looking at a preponderance of the evidence about whether the bar wouldn't apply, it's really petitioner's burden to show and explain why self-defense would apply, perhaps under Brazilian law. But it wasn't raised or explained. It was the model penal code. And the board addressed, well, the model penal code doesn't stand for that, that it would apply in this case. I ask this question to counsel for the petitioner. The statute says when there are serious reasons for believing that the crime has been committed, I asked her, is that equivalent to probable cause? And do you agree with that? Yes, Your Honor. Okay. Then we're dealing with Brazilian law. Petitioners charged under Brazilian law for attempted murder. Under Brazilian law, do they have to find probable cause to charge somebody? I mean, like an indictment or not? I don't know the answer. Okay. I'm happy to provide the court with something. So it's not conclusive that because he's charged with attempted murder that the Brazilian court found probable cause. So we can't go that way, can we? Without looking into Brazilian law further, no, Your Honor.  What items can we look at to determine? We're saying it's a probable cause standard. What items do we look at to determine whether there's probable cause? Usually, as I mentioned at the beginning, it would be the underlying conduct. But the board in matter of WERB had much fewer evidence than in this circumstance. They basically just had an interpol red notice alleging a charge of, I believe it was participation in gang activities. And so there, without testimony, knowing what the underlying conduct was, the court looked at, okay, what is this charge? What does it require? Does it necessarily involve certain kinds of conduct that are serious enough to meet this bar? And that could have been a way that the board went with in this case, given that we have an undisputed charge of attempted murder. But it ultimately didn't go that way. Did I answer that question?  And then just to counter one of the points that my opposing counsel said, that there wasn't a reasonability determination in terms of the conduct there. Here, the IJ did consider everything that is undisputed from the start of that interaction with Rafael to the point of him leaving afterwards. And so it necessarily falls under the determination that it's inherently dangerous conduct. If there are no further questions on this serious... Thank you, counsel. All right, rebuttal. Yes, three minutes rebuttal. So, your honors, I would like to make three points addressing my colleagues' presentation. First of all, when we look at the Berhane via Holder, it clearly states that justification in the form of self-defense should be considered during the analysis of serious non-political crime. Second, the government still insists that it should be immediate harm to the person for justification to apply. And our position is that, no, it should be honest and reasonable belief that a person is in harm. So actual harm is not required, and it's demonstrated by many cases. For example, Commonwealth via Hager, when the Kentucky court pointed out that it must be not need in defense. It must be belief in the need of defense. And the third point, when you ask the counsel whether you can do the de novo analysis of serious political crime, it's our position that yes. And because since there is no political moment involved in the case, there is no difference to the expertise of the agency in political matters. And second, in the light of a lawful right decision, given more, how to say, rights to the federal courts in reviewing the decisions of the agency. Any further questions? No. All right, thank you, counsel. The case will be submitted.